IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ROGER PACE,                              )
Plaintiff,                               )
                                         )
v.                                       )          21-cv-3225
                                         )
DAVID GREENWOOD, and others,             )
Defendants.                              )

## ORDER

Plaintiff proceeds pro se. He brought this suit pursuant to 28 U.S.C. § 1983 alleging constitutionally inadequate medical care in the Pike County Jail, in violation of the Fourteenth Amendment. Defendants moved for summary judgment (#24), asserting Plaintiff failed to exhaust his administrative remedies before filing suit. This Court denied Defendants' motion, finding that an evidentiary hearing was required to determine disputed factual issues as to exhaustion of administrative remedies.

On April 26, 2023, the Court conducted an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). The Court now finds Plaintiff did not exhaust his available administrative remedies and dismisses Plaintiff's case with prejudice.

A. Facts

1. Undisputed Facts from Summary Judgment Papers

Plaintiff was arrested on April 5, 2019, and was detained in the Pike County Jail through July 28, 2021.

The Pike County Jail has a grievance process. To submit a grievance, a detainee must use a kiosk. The kiosks are in the jail's cell blocks. Detainees receive a PIN to

1

access the kiosks. When an inmate logs into the kiosk with their PIN, they are presented with options, including the option to submit a medical request, access the commissary, send general messages, and submit grievances. When the kiosk is functioning properly, if the grievance tab is selected, the detainee will be directed to a page asking for the date, time, and location of the incident being grieved, names of staff involved, names of witnesses, and a description of what happened.

The Pike County Jail does not have a kiosk in the holding cell. Plaintiff was in the holding cell for about the first seven days he was in the jail. Thereafter Plaintiff was held in various cell blocks. Plaintiff always had a kiosk in his cell block. Plaintiff received a PIN to access the kiosk. He was not trained on how to use the kiosk. He observed other detainees using the kiosk and learned to use it from that experience. He testified in his deposition that the kiosk was "simple" and "pretty self-explanatory." He testified that he likely observed the menu item for filing a grievance the first time he logged into a kiosk, and that that option "obviously" had to be there.

Plaintiff submitted medical requests on the kiosk, and medical staff responded to those requests. He also submitted non-medical requests. Plaintiff did not submit any grievances.

In his deposition, Plaintiff initially testified, "I never once – I never once pushed the grievance request if that's what you're trying to get out of me." Later in his deposition, counsel followed up, asking, "you told me that you never pressed the grievance button, correct?" Plaintiff replied, "No, I did press it. I couldn't get, I couldn't get nothing happening there. I don't know what was going on. It was sending me

through some stuff that really was confusing to me, and for whatever reason, I don't know what was happening, but it wasn't done." Questioned further by defense counsel, Plaintiff testified that he pressed the grievance button, was unsuccessful in filing a grievance, and thereafter had not again attempted to submit a grievance via the kiosk. Plaintiff also testified that no one prevented him from filing a grievance. He knew the process and chose not to try it again, after he was unable to access it on his first try.

Plaintiff describes a grievance as a "complaint about whatever the situation is." He knows the difference between a medical request and a grievance.

Jail administrator Brenecke avers that he was not notified of any problems with submitting grievances on the kiosks during Plaintiff's detention at Pike County Jail. He further avers that if he had been made aware of this issue, he would have sought a service call from the company that maintains the kiosks.

2. Evidentiary Hearing

The following evidence was presented at the hearing on April 26, 2023.

a.  Plaintiff's Testimony

Plaintiff was sworn and testified as follows. Plaintiff testified that he filed "written complaints," but that he had not filed a grievance because the kiosk was inoperable. In response to the Court's question of what else Plaintiff did to try to file a grievance, Plaintiff testified, "the medical part of the kiosk," referring to his medical requests. Plaintiff testified that he did not talk to anybody about not being able to file a grievance.

Plaintiff testified, and repeatedly confirmed, that after his first unsuccessful attempt at submitting a grievance on the kiosk, he gave up and instead submitted medical requests.

Plaintiff testified that at the time that he felt he had a grievance regarding his medical care, he knew that his grievance could be filed by using the kiosk. Plaintiff testified that once he was unable to get the kiosk to function, it "became impervious" to him.

b. Defendant Dan Brennecke's Testimony

Defendant Brennecke is the Jail Administrator of the Pike County Sheriff's Department. His responsibilities include day to day operations of the Jail and related activities, including being aware of the functionality of the kiosk equipment at the Jail. Brennecke has been Jail Administrator since early 2019. Brennecke was trained on the kiosk system by his predecessor, as to the system's functionality, how detainees would make grievances, and how they would send messages. Brennecke has a product representative from the Turnkey company, who operates the kiosks. If Brennecke has any problem with the kiosks, he contacts Turnkey's help desk. If he does not get results, he then speaks with the product representative.

Brennecke testified that since he became Jail Administrator he has never been notified that one or more of the touch screen buttons on the kiosks at the Jail did not work.

Brennecke testified regarding the kiosks' display, stating that the documents at (#25-1) at 40-42 are correct representations of the grievance submission screens on the kiosks.

Each inmate is given a PIN to log in to the kiosks, and when they log in they will see their personal information, then will be provided with various options. The options include a "Requests" button. From the Requests button, inmates are provided the option of "Fastcase Law Library," "Pike County PREA Policy," and "Pike County Requests." From the Pike County Requests page, inmates are provided five options, including "General Request," "Grievance Requests," "Inmate Handbook," "Medical Request," and "Mental Health Request."

Brennecke testified that if one of these requests is available, then all will be available since the options are all touchscreen buttons rather than physical buttons.

Brennecke testified that (#33) at 6 – 75 includes all grievances from when Plaintiff was detained in the cell blocks at the jail. These records show dozens of inmate grievances submitted through the kiosks by other inmates.

Brennecke testified that the Jail population is relatively small, and that there is daily contact between inmates and jail personnel. If someone indicated they had a grievance but could not get the kiosk to work, Brennecke would put in a request with the kiosk vendor to get it working again.

On cross examination by Plaintiff, Brennecke testified as follows. If inmates have questions about how to operate the kiosk, correctional officers will show inmates how

to use the kiosk. Inmates will only be instructed on operation of the kiosk if they ask for assistance.

   B. Analysis

   "The PLRA instructs that '[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" *Smallwood v. Williams*, 59 F.4th 306, 313 (7th Cir. 2023).

   The issue of exhaustion is properly raised through a motion for summary judgment, and a court should resolve the issue before reaching the merits of a prisoner's case. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *see also Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999) ("[T]he court must not proceed to render a substantive decision until it has first considered § 1997e(a).").

   Defendants bear the burden of proving that a plaintiff failed to exhaust their administrative remedies. *Banks v. Patton*, 743 F. App'x 690, 695 (7th Cir. 2018).

   Although a prisoner must exhaust the grievance procedures proscribed by the institution, the prisoner is only required to pursue administrative remedies to the extent they are available. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The unavailability of a grievance process "lifts the PLRA exhaustion requirement entirely and provides immediate entry into federal court." *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016). "The term 'available' is given its ordinary meaning, and it does not include any

6

requirement of culpability on the part of the defendant." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018).

The Court finds the following facts.

The jail staff never trained Plaintiff expressly on how to submit a grievance. He was provided a PIN and could observe other detainees use the system. Detainees would also be provided training on the kiosk by jail staff if requested. Plaintiff thought that the kiosk system was simple and self-explanatory, and Plaintiff successfully submitted several medical requests via the kiosks. Plaintiff never asked for help with the kiosks.

The Court finds Plaintiff did not attempt to submit a grievance via the kiosk. Plaintiff testified during his deposition that he never pressed the grievance button, then later backtracked and said he had once tried to submit a grievance but was unable complete the process. At the April 2023 hearing Plaintiff again testified he tried once to submit a grievance but was unable do to so and never tried again. The Court finds Plaintiff's testimony that he attempted to submit a grievance but was thwarted by nonfunctional equipment to be not credible. Plaintiff's testimony is rebutted by the many other grievances successfully submitted during the same period, and by Plaintiff's own deposition testimony. Defendants are thus entitled to summary judgment for Plaintiff's failure to exhaust his administrative remedies.

Further, even if the Court credited Plaintiff's testimony that he tried – once – to submit a grievance, Defendants would still be entitled to summary judgment. Defendant provides screenshots of what the kiosk menus looks like; the menu items are straightforward. Defendant Brennecke testified that inmates had regular access to jail

7

staff, and that if any issues with the kiosks were raised, he would address them promptly with the company that provides the kiosks. It is undisputed that jail staff were available to answer questions and assist inmates regarding any issues with the kiosks. Plaintiff himself testified the system was simple to use. Plaintiff's choice to give up on filing a grievance, without a second attempt, without asking anyone for assistance, and without even telling anyone that he was having trouble submitting a grievance, would be insufficient to show that the grievance process was unavailable to Plaintiff, if the Court were to credit Plaintiff's version of events.

The Court finds that the grievance process was available to Plaintiff, and he did not avail himself of the process. Accordingly, the Court dismisses Plaintiff's complaint.

**IT IS THEREFORE ORDERED:**

1) **For the reasons stated in the written order, the Court dismisses this case with prejudice. The Court directs the Clerk of the Court to enter judgment in favor of Defendants and against Plaintiff. All deadlines and internal settings are vacated.**

2) **If Plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a). A motion for leave to appeal *in forma pauperis* must identify the issues Plaintiff wishes to present on appeal to assist the Court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(C); *Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be allowed to submit a statement of their grounds for appeal so that the district court "can make a reasonable assessment of the issue of good faith"); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (a good-faith appeal is an appeal that "a reasonable person could suppose . . . has some merit"). If Plaintiff chooses to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

ENTERED: June 5, 2023.

<u>s/Michael M. Mihm</u>
MICHAEL M. MIHM
U.S. DISTRICT JUDGE